The people of the state of Illinois have been made by Richard Leonard versus Marcus S. I'm going to respond with the legal advocacy service appointed to represent Marcus S, Andrew C, and Katharine D. and their appeals in the College of Environmental Affairs. In these four appeals are actually eight separate cases. Marcus S is a 23-year-old who was first at UnityPoint Medalist and who had been looking to sign into the hospital voluntarily and was taking medication voluntarily. Yet the court found him subject to both involuntary treatment and involuntary treatment. The involuntary treatment went up to 27 psychotropic medications, including some his mother confirmed he had had negative reactions to. Marcus was discharged from UnityPoint and again committed a short while later to OSF St. Elizabeth here in Ottawa, although the petition was filed 17 days late. He was again ordered to have psychotropic medication, including one of the medications that had severely harmed him. How did he get to LaSalle County? Wasn't he in a 90-day commitment? Well, that was a question that I had too when I first got these records. He was at UnityPoint Medalist for an order up to 90 days. He was discharged before that 90-day period ended. And then there was a gap and then he came back to UnityPoint Medalist and in the sentient record it says that UnityPoint Medalist did not want him and so that's when he was transported to OSF St. Elizabeth. He was transported? As far as I can tell, he started out at UnityPoint Medalist. Right. He was in Canton, Illinois. He was at UnityPoint for up to 90 days and then how did he get to St. Elizabeth here in Ottawa? Who transported him? Well, I don't know. The record doesn't say. But for whatever reason... I mean, is there some type of little transit system going on that they take people like this and move them from place to place that we don't know about? I can tell you from our experience in the trial court that sometimes a person will come to an emergency room. Correct. And then... Which is what happened to one of the cases in your group of cases. And so a person will then either be admitted to that hospital. Sometimes hospitals don't have a mental health unit so they stay in the emergency room and then are transported to a hospital with a behavioral health unit. In this case the report was UnityPoint wouldn't accept him back. So yes, then he ends up at OSF St. Anthony here. But again, this petition was granted and he was ordered to have psychotropic medication again. Although no one looked into the immediately prior court proceeding or records and he was again ordered to have one of the medications that had severely harmed him. Angela C. is a 36-year-old. She had come to OSF St. Elizabeth to sell a handmade quilt and bag to the Ipshaw and who lived at homeless shelters while she was awaiting housing through the South County Housing Authority. Her psychiatrist supported inpatient commitment because as an inpatient he could then run tests on her because he didn't know exactly what was wrong with her. He thought something was wrong with her because she went from homeless shelter to homeless shelter. Kathleen E. In that she said she talked to angels and believed in nontraditional methods of health care. That's true. Kind of like a Christian scientist. And I did note in the Kathleen E. brief that there are many, many resources out there and books, resources on that topic, on metaphysical healing and belief in angels. Kathleen E. is the 65-year-old who lived at the Raven Center here in Ottawa. And it's a senior community with an adult daycare component specializing in helping residents and providing services when a resident is discharged from a hospital. She's the person who did not have her hearing aids and was ignored, who indicated she'd like to testify and was again ignored, and whose trial counsel disparaged his client on the record. These four consolidated appeals share recurring issues. These are not isolated problems or outliers. These same issues arose in cases out of both Peoria and LaSalle counties. This court consolidated the cases based on what appears to be a pattern of practice of handling mental health cases. The pattern, as I can discern, seems to be that the actors involved go through the motions pro forma in these proceedings. And these are critical proceedings to determine whether to restrict an individual's liberty or to override their personal autonomy. This court now has the opportunity to make sure these proceedings are taken seriously going forward and not treated by those involved as mere formalities. The state here admits to errors in all cases, although it officially conceded errors only in the later two, Angela and Kathleen. In each case, respondents raised the following. Lack of statutory compliance with petitioning requirements. The state concedes this is reversible error. Lack of compliance with the capacity element for involuntary treatment. The state concedes this is reversible error. Lack of compliance with the statutory predispositional report. The state concedes this is reversible error. Respondents' counsel bear little mistake in managing statutory compliance. The state concedes this amounted to ineffective assistance and therefore reversible error. It's to the state's credit here that it conceded its noncompliance with statutory requirements. I would point out to this court that there is no case law interpreting Section 3-101 of the Mental Health Code, the part that provides that the state's attorneys shall, in mental health cases, quote, ensure that petitions, reports, and orders are properly prepared, end quote. This court could accept the state's concessions and cite to Section 3-101 to remind the state of its obligation to take mental health matters seriously, and I mean to review petitions, to amend them if necessary, or to dismiss them if they are laid or otherwise don't meet statutory requirements and cannot be fixed. And to make sure there is a written predispositional report so the trial court can have full information when deciding where to commit a person if they're found subject to a voluntary commitment. In the consolidated cases here, inpatient hospitalization always seems to be the foregone conclusion. It's also the state's responsibility to not skip over statutory elements during its case in the course of a trial. But when the state makes a foul, or multiple fouls like in the cases here, it becomes the Respondent's counsel's obligation to raise these things. And by no means should Respondent's counsel make this kind of worse, like counsel did here in Witt, California. It wasn't just the state's and Respondent's counsel's here that erred. The trial court, too, acquiesced in the pro forma hearings. For example, the court did not pause when Kathleen E. did not have her hearing aids, or when she was politely asking about her turn to testify. The Peoria trial court did not revisit Marcus's commitment order. This was the first Marcus case. The court did not revisit Marcus's commitment order that had been based in part on his refusing Risperdal. But then in the very next hearing, immediately after the commitment hearing, his mother testified about her son's serious reaction to Risperdal. The trial courts also seemed to look at a finding of subject to commitment as naming ipso facto inpatient hospitalization with no consideration apparent on the record of less restrictive alternatives. And although the trial courts are required to give appeal rights, both orally and in writing to Respondents, the only appeal rights given orally after these eight hearings were to Kathleen E. after the second of two hearings, and the appeal rights were given by the attorney. I didn't raise this as an issue because the people here all exercised their appeal rights. When you're saying the second of two hearings, you're talking commitment hearing and the... Involuntary treatment and involuntary medication. Yeah, involuntary medication hearing. Because these usually involve, for a form of two hearings, A and B, right? Well, and I want to digress just for a moment. We also handle trials on behalf of mental health Respondents, and when a petition for commitment and a petition for medication are both filed, or a treatment petition may also be a petition for electroconvulsive therapy. When those are both filed, it's important to me, with the client, to talk with the client, of course to look at the records, interview people, you know, witnesses, and then talk with the client and say, you know, maybe there's a good reason to go forward with the treatment petition first. If you go forward with the treatment petition, if you are successful in defeating the petition, you are probably going to be discharged. If you are ordered to have the involuntary treatment, then we can postpone the commitment. That's judicially economical, too, because then the person is likely to have a change based on the treatment that's given, and if circumstances change in them, we can say, hey, would you like to go forward with this commitment? We can possibly do an agreeable outpatient order. Or the person may be discharged because they've improved so much. Or they may choose to sign a voluntary application. Sometimes it's better to go forward first on an involuntary commitment petition if there really isn't much of a case, because then if the person is discharged from the hospital, the hospital doesn't wish to continue the involuntary treatment case. It seems that here, they're just a done deal. They're done together, and there's no consideration for the particular elements of the treatment case once the medication case has been, or once the commitment case has been completed. There's sort of a shorthand going into the medication case. Really, a person who has just been committed is not going to have any real chance in that medication case. I would ask the court, too, if you look at the records here, it appears that the counsel are meeting with their client right before court. It seemed like the attorneys were learning about their clients and the medical information that they could have gotten from a review of the chart, the medical chart. They're kind of, this is all improv. What percentage of counsel are coming from the state's attorney's offices? Do you mean counsel for the, well, the state's attorneys represent the, they pursue these petitions. They're from the state's, but where are the other counsel coming from normally? In the other counties, there's a mix of legal advocacy service, which is the preferred counsel under the mental health code. The legal advocacy service is the advocacy division under the guardianship and advocacy commission. So that's the legal advocacy service specialty, is representing persons with disabilities and protecting their civil rights. Where legal advocacy service doesn't have an office, then it's the public defenders is next in line under the mental health code. So who are you saying, so which side is it that's not doing, in your view, the required following of the statute or challenging that it's not followed, or is it both? It's really both. We end up having to do ineffective assistance of counsel arguments because many arguments are forfeited because they're not raised at the trial level. So a lot of times this is all put on the defense counsel, but there's that section 3-101 in the mental health code saying the state's attorneys of the several counties are mandated to ensure that petitions and reports are properly prepared. So it's, often the fall ends up on the defense counsel. But the state is also not looking at these matters, and not, it seems like everybody involved is not treating these as real cases. And not... Do you think that's because there's relatively few of them, and there's such a unique area of the law? Did you say relatively few and it's a unique area of the law? Yeah, I mean that a lot of people are not focused on that in their practice, even public defenders. That could be. Everybody's kind of, seems like, kind of crashing into this because they're required to. Nobody wants to deal with it. I don't know if nobody wants to deal with it, that's incorrect. Nobody's kind of just familiar with it. And so they just go into it, you know, do it kind of naively. I would hope that a state's attorney is not going to improv a criminal case, or the defense counsel in a criminal case is not going to wing it. You know, these cases are serious too. I'm not saying that. Oh, I understand. But I think it would be very helpful for this court to point out that 3-101 of the mental health code exists, and it's important. There is, though, just the number of years that someone's been on this court, it runs in our mind, especially out of one venue, one county, that we did a fair amount of publishing in this area. But you're saying you cannot find that is directly dealing, any precedent that's directly dealing with 3-101? No. It's published out to serve either as guidance or chastisement for not following the statutory framework? Well, there's been various chastisement from time to time saying everybody should do better in these cases. In the Supreme Court's Andrew V. case, the court says that these cases cannot be handled in compulsory pro forma and a slipshod manner. So the reason I'm asking that, it seems to me there is case law out there doing that, instructive or chastising. Well, there's nothing citing to Section 3-101. Okay, specifically to 3-101. Right, and something else there's no case law on is a failure to include facts in a petition for involuntary treatment. Illinois is a fact-cleaning state. It's not sufficient simply to file a poor petition alleging the statutory elements for involuntary treatment. One of the problems with just alleging the statutory elements is that, for example, one of the elements for involuntary treatment is that because of mental illness, the respondent exhibits any one of the following. One, deterioration of ability to function as compared to the recipient's ability to function prior to the current onset of symptoms. Two, suffering behavior. Or three, threatening behavior. Respondents and their counsel need to know the specific reason here. Is it one? Two? Is it all three? How do you prepare otherwise? And that's just one of the multiple. And also you're saying that there needs to be evidence supporting those fact allegations. Am I correct? Yes. And there's an insufficiency of that. Yes. You can't just skip over these elements because somebody said a particular key word in the commitment here. One of the problems, too, is that these cases are filed in LaSalle and three other counties anyway. If somebody has a commitment petition and someone has then an involuntary treatment petition, they're filed under the same case number. I don't know that that's done anywhere else in the state. And maybe that lends the court and the state and the defense counsel to treat these as... Lockstep? As lockstep? Yes. And to miss things then because they're going from one hearing to the next and they're sort of mashing the testimony together. But the elements for involuntary medication are very different from the elements for involuntary commitment. I will ask to reserve time for... Thank you. Thank you, counsel. Mr. Leonard? May it please the court, counsel, I will respond to this response argument first. And of course, most trustee actors in the courtroom hear the trial that the attorneys in the federal law facility, they don't usually follow the law or the statutes and give the patients everything that they should have. And I'm sure it's not only frustrating for us, the attorneys, but also frustrating for this court because it's just a soldier's case. This court has published many cases about how cases... Well, let me just ask you because it seems like the state's conceded that virtually everything that could be done wrong was done wrong and it's pretty routine. And so you're not really... But the courts have been told time and time again by appellate courts, by the Supreme Court, and nothing changes. Yes. What's the mother to do? Yes. I was asked that question about ten years ago and I didn't have an answer. But after thinking about it, I've come to the conclusion that this is a very specific part of the law and not everybody is versed at it. It's a complicated part of the law, as Justice Linton mentioned. And the only way to stop these appeals and cases from occurring is to have the trial judge undergo seminars or training on these cases because the trial judge is the gatekeeper here. If the trial judge simply signs off on whatever the state says, then the cases come up in appeal and, of course, in reverse. This court can order trial judges to undergo training, but the Supreme Court can't order that training. So it would be imperative, I guess, that this court is perhaps let the Supreme Court know of this problem either formally or informally and if the health care facilities and the state start losing the cases at the trial level, that will get the attention that they better follow the rules. Well, the only thing is they've been losing cases at the trial level for years, but then they don't really go back because even though they get an order, the cases are, even if the appellate court says they're not moved, they really are because nothing happens because the treatment's over. And so, I mean, it just seemed to me that the state has as much interest as counsel for these petitioners in trying to figure out this is not the usual you're sitting over there arguing against somebody who's representing a mass murderer and maybe the state also could help figure out what it is to do them. As I'm sitting here, it seems to me the answer is with the Supreme Court and not only trial judges but the state's attorney's offices having one or more people that are trained and qualified to handle these type of cases and also available for other training available for people in the legal advocacy, the legal services divisions so people are trained to deal with these. Case after case after case and you still get this stuff where nothing's ever done right. Yes, you're correct. And the key here is that they train because this is a complicated area of the law. Ms. Spann is an expert. Some of these cases are probably thrown at the state's attorney, consistent state's attorney's desk, and they have to try to figure out what's going on. The statute is complicated and I'm sure defense attorneys representing the respondent are not well versed as well as the trial judge. My point is the trial judge is the gatekeeper here. If the gatekeeper denies the state's position, then the respondent will be set free. And I think that would probably... Yeah, that's all well and good, but I think what Justice Schmidt is saying, I think we all kind of agree, the whole system of all actors in the system could use this training. But, you know, it's hard. A murder case is no different than another criminal case. If you're a trained attorney and you're examining a petition and you're representing the respondent and you're not asking questions, you're not putting to the test of advocacy. Correct, yes. Courts are limited in their sua sponte powers. Yes. Yes, I agree, there must be training at all levels for attorneys and trial judges in these cases will keep repeating themselves. And therefore being not moved. That was my next argument. Well, and in defense of the trial judge, just because everything procedurally was done wrong, which should have been done right, they may look down there and see somebody where the trial judge and that trial court may realize it's in this person's best interest at this time from what I see to be for their own protection and the protection of those around them to be involuntarily committed. So it's not always because the procedure was wrong. In some cases, undoubtedly they probably got the right result, but they need to get the right result the right way. Correct. Yes, they want to help these patients, but all the mental health facilities want to do is have these patients committed, involuntarily medicate them, get them back to functioning, then they're released out in the community and they're taking their medication and doing well, and then after a while they think, well, I don't need the medication, and they stop taking the medication. New symptoms occur, and then this cycle repeats itself. It's like a revolving door. So everybody, I think, in the courtroom is frustrated. What happens down the road?  And if they don't follow the code, the trial judge should not voluntarily admit that patient. I guess it lands on the Supreme Court's desk to try to resolve this issue by training trial judges and attorneys and have attorneys frequency in this area, really knowledgeable of what they have to do. Otherwise, these cases will still be coming back. But the people maintain that all of these cases are moved, as I said before, it's like a revolving door. Respondents get involuntarily admitted, they do well, they get out, they stop taking their medication, they come back. So all of the respondents in these four cases have multiple commitments, and all of them raise the question of whether the evidence was sufficient to involuntarily admit them and involuntarily medicate them. The leading case in this state is the Illinois Supreme Court in Ray Alfred H. H. on moveness. I'm sure this court is aware of all the moveness exceptions in Alfred H. H. They went through all of the moveness exceptions and they found that none of the exceptions apply to Alfred because he had multiple convictions, he had multiple admissions. And it was a question of whether the evidence was sufficient to convict him or not convict him, but admit him. Or give him involuntary medication. In all of these three cases, the respondents have multiple commitments and they all raise the issue of whether the evidence was sufficient to commit them or involuntarily commit them along with whether the state filed a statutory guidelines for having a person involuntarily be committed. Now I'm not sure if there's any case law on section 3-101. I know this case, as Justice Aldrich said, that this court has issued many opinions giving evidence in chastisement, but I don't have to take Ms. Bond's word for it that there are probably no cases of criminally intrusive exception to that law. So the only time that these cases would not be moved was where there was a question that was not decided in case law. It was a unique question. Or whether this was the respondents' first involuntary commitment. After the first involuntary commitment, then the respondent has nothing else to infringe upon his rights because all of those consequences have already occurred at the first involuntary commitment. But you're not able to obtain a boycott or a firearm, to give you an example. So instead of going through every case, I just summarized that all of these cases contain the same issues raised in Alfred H. H. and then some regarding the statutory instructions and following the statutory guidelines for having these respondents committed. Other than that, I ask that this court find that these cases are moved based on the several involuntary commitments and the specific issue of whether that is sufficient to admit these respondents involuntarily. If there is no case law on Section 3-101, then that would be an area where this court would probably publish the case because one of the exceptions of the first exception, the public interest exception, is if there is case law that is in disarray. And I don't mean case law in disarray in this context. If there is some case law that could be linked from this case, but it's not out there that I would have to concede, that would be the only reason that this court would find that the cases are not moved and publish that section, the specific section, to give guidance to future attorneys and judges if they remove cases. Other than that, I ask that this court find that these issues are moved and dismissed in all four cases. I'm just curious about an issue. In the previous, you confessed to her on the women's cases on a couple of issues, but not on Marcus's. The issues seemed the same to me. Was I missing something? Well, the first thing that this court has to do is address the movement's question. If it's moved, then we don't need to accept it as an argument. Right. Well, I agree with your briefing on the two women. There were a couple of issues that you confessed to her. Yes. But in Marcus's two briefs, you actually argued them on the merits. And I just wondered why. Well, I wanted to cover all the bases. I just didn't want to leave it at the movement's question. I wanted to make sure that it was fully free and that this case was decided that it was not moved. And if the case law is against me or the statute is against me, I have no qualms about confessing here. Okay. Questions? Thank you. Ms. Fonz, some rebuttal. You've got your opponent agreeing with you. That's kind of rare. Yes. Why doesn't the capable of repetition exception apply here? Or do you think it does? I mean, discuss that. The capable of repetition exception applies across the board here. The public interest exception applies across the board here. As far as if we look at the two Marcus cases, there's a clear case of capable of repetition based on this court's Wilma T case. Two cases involving the same issue, same person. That is handmade for the capable of repetition. We have a Voight-Overdue exception. When you look at the four cases altogether, I have a chart on page two of the final reply brief. It's the Kathleen E. reply brief, which sets out the issues that are repeated in each of the cases. What are we doing? I'm sorry. Go ahead. But the public interest exception applies to cases where statutory compliance is an issue, where the need for guidance is shown by the repeated failure to do the correct thing. This court has cited to the Laura H case saying that the repetition of problems shows the need for ongoing guidance and shows that these issues recur. So the public interest exception applies here. We have four cases, and each one has maybe a different issue here and there, such as the late file petition in the second Marcus S case, for example. But we have statutory compliance issues. These are not sufficiency of the evidence issues. This is failure to file a predispositional report. This is failure to put on any evidence of evidence. This is failure to prove the threshold issue of capacity in a voluntary medication case, either by not putting on any evidence about it, providing a non-expert opinion, or in conjunction with failing to provide all of the information, all of the written information for the respondent to be able to determine or to make a decision. Let me just ask you, though. I get your point, but part of the problem is, I don't disagree with you, but there's case after case after case saying what you're doing is wrong, and it still keeps happening. So you wonder why. From appellate court to Supreme Court, same old, same old. Well, this court does have an opportunity to issue a comprehensive decision here, saying here's what needs to happen. Maybe it would become the training case for courts, for state's attorneys, for public defenders who are still handling these cases throughout the state. Certainly in this decision, the court could say we would recommend training. We'd ask the legislators to require training. We would ask, as Mr. Leonard suggested, ask the Supreme Court to require training. But legislators could do that. I mean, certainly you agree that ordering training is above our pay grade. Yes. But these decisions are what make up the training. These are the decisions that go into a course book on how to do these cases. And a moot misacception should be applied here. And these cases should not be left by the wayside after the state basically conceding that they were bad, that mistakes were made. These are not sufficiency of the evidence claims. These are problems of things not being done in accordance with the Mental Health Code, which is meant to protect recipients' rights. I would like to point out, too, that in the Lausanne cases, the state's attorney was always the same. There appears to be a dedicated state's attorney during mental health cases. So those three cases were done by the same state's attorney and the same public defender. And the same judge. Same judge also. Same judge in the Lausanne County cases. Well, these are basically, in many jurisdictions, dedicated calls with assigned people. Well, I know in many counties that's the case, which are dedicated people. I do know from... Well, I don't know if they're dedicated people, but the call is dedicated to one of those cases. Well, I know from talking with the defense attorney in the Peoria County case that in that county there were a handful of attorneys, I think four or five attorneys, and they would switch off from week to week. There would be reluctance to continue a case, maybe to prepare or to get a record or whatever, because then that attorney would be pushing off the case to the next week's attorney. And so they buy the case, they go into court, and just do it. So that's a practice that should stop. There certainly should be counsel dedicated to the court call. Well, assigned to that case, right. Hopefully they will be dedicated. And I'd like to just mention that these are not best interest cases. This is not guardianship. These are adversarial proceedings, and the judge is not trying to determine the best interest. And maybe that needs to be said in this case. Because there are remedies. If a case is dismissed, and there needs to be a refinery, that's something that can happen, but there needs to be a basis for that refinery. Well, in the real world, though, and I've got a little experience in the real world, if a judge denies the petition, what happens with the, for lack of a better term, the patient? They walk out of court until the next petition is filed? Well, let me answer that in terms of talking about principles of therapeutic jurisprudence. Principles of therapeutic jurisprudence show that respondents who are treated with respect to the cases handled according to the law are more likely to accept the outcome, whether that's in their favor or not. Don't misunderstand. I'm not suggesting that anybody shouldn't follow the law, but my question is, if when you've got these cases, it's not done right, and maybe you've got a person in court who might very well have given the opportunity to walk out of that courtroom in such a state that they'll harm themselves or somebody else when the petition is denied. Is there a remedy for that? Pardon? Is there some kind of short-term remedy to give for that situation? Well, if a person, in these cases, the people are all ordered, committed, and medicated, right? But you're saying that it wasn't done procedurally or substantively, correct? Yes. So in conclusion, the order that was entered could not be supported by the statute, right? That's correct. So I think, Justice Schmidt, correct? Correct. Your question is, what happens if a motion to dismiss is granted or if a petition is denied? Well, on a regular basis, when I'm in the trial court, if a motion to dismiss is granted, I advise my client, and the hospital does it, they would have the right to stay on an informal basis if they choose, because now it's their decision. I am stunned at the number of people who say, oh, it's up to me now? Okay, I'll stay a few days. Because the social worker says, well, we're kind of just transplanting for you. Okay. Which is the Marcus case. The Marcus case started out with, I will voluntarily... I would stay voluntarily. Right. But everybody blew that off. Marcus had been willing to stay voluntarily. And your member Marcus was taking medication voluntarily at the first hospital. Right. But when it's up to the person, they get to exercise their autonomy. There are cases... I have a colleague in court right now, seated behind me. She has recently had a case, and I've had the same situation occur, where a medication petition is denied. Because there was not compliance with the statute, or there wasn't sufficient evidence, whatever the case may be. And the person says, oh, it's my decision now? Okay, I'll take that. So that's part of therapeutic jurisprudence. The courts need to recognize that we have to handle these cases appropriately, especially someone young like Marcus, who's maybe having his first experience with symptoms of mental illness. These cases are handled properly. The respondents know they can trust the system, and it's going to do right by them. The next time they have a situation where they may need help, they're not going to run the opposite direction. They're going to know it's okay to go to a hospital, or it's okay to go to court, because they're going to be treated fairly. I want to point out that Kathleen E. later executed an advance directive. And in that advance directive, she excluded particular treatments that the court had ordered. She included some that she was comfortable with, excluded other treatments, and prohibited her then-treating doctor from being one of the doctors deciding her future fate. So, you know, here's somebody, all of these people here have the wherewithal to appeal. Even though only one person got oral appellate rights, and that was from the attorney, not from the court. So that's another thing. The court, I didn't raise that as an issue because these people appealed. But what about the people who don't have the savvy to know that they can exercise their right to appeal? Marcus hand-wrote his notice of appeal to the court. So I guess I would ask the court to take all of that into consideration. Oh, I'm sorry. Would you like me to finish? Sure, yeah, sure, sure. The state acknowledges that there was a lot of wrong throughout these cases. And although there wasn't an official concession in the Marcus S. case, there were concessions in the later cases that covered those same things in Marcus S. So the concessions shouldn't fly across the board. And I would point out that the Supreme Court said in Alford H.H. that a MOVES exception is going to cover most mental health cases. And as I did mention in, I believe, at least the final reading, these are not Alford H.H. situations. These people are not murderers. The state says that they had multiple commitments. Well, we know Marcus did because he had two cases. In Kathleen's case, there was mention, I think, that she may have had another admission. I don't remember offhand if that was involuntary or not. And I don't know, we don't have any information about Angela. There was a hearsay statement that she might have been at a facility for four days somewhere, but I couldn't find any facility by that name. And we have no evidence of that. So these are people who deserve an answer to their appeals. They're looking for justice here. They exercise the right to appeal, even without the court orally providing that, as it should. That's another area where the court could say something in a decision. And a final thing would be to recommend to the circuit court clerks that these cases be filed separately under separate case numbers, as they are in other counties throughout the state. Thank you. We'll take this matter under advisement. A written disposition will be issued. And right now, the court will adjourn until April.